IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Clyde Earl, )<br>)<br>    Plaintiff, )<br>)<br>       v. )<br>)<br>Antonio U. Espejo, Juan V. Gali, Arturo )<br>Guzman, Joseph R. Paoletti, Eddie K. )<br>Haynie, Edward M. Moser, Colin F. )<br>O'Shea, Jorge N. Solivan, Douglas E. )<br>Straka, Michael Carrasco, Miguel A. Bahena, )<br>Artemio Vargas, Dora M. Hindman, Tracy )<br>L. Walczak, Aaron S. Cobb, Ryan P. Brown, )<br>Evelyn F. Redding, Roldan Solis, Torrey L. )<br>Barnes, Devan H. Richardson, and the City )<br>of Chicago, )<br>)<br>    Defendants. ) | Case No. 17-cv-195<br><br>Judge Feinerman<br><br>Magistrate Judge Kim<br><br>**JURY DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff, Clyde Earl, by his attorneys, states as follows:

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution, the Civil Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1343, 1331, and 1367.

2. Venue is proper in the Northern District of Illinois under 28 U.S.C. Section 1391 because the acts complained of occurred here and, on information and belief, Defendants reside here.

**PARTIES**

3. At all times herein mentioned, Plaintiff Clyde Earl ("hereinafter "Earl"), was a citizen of the United States, and resided within the jurisdiction of this court.

4. At all times herein mentioned, Antonio U. Espejo [Star #7966], Juan V. Gali [Star #12394], Arturo Guzman [Star #12864], Joseph R. Paoletti [Star #13190], Eddie K. Haynie [Star #13846], Edward M. Moser [Star #16090], Colin F. O'Shea [Star #18776], Jorge N. Solivan [Star #19487], Douglas E. Straka [Star #6746], Michael Carrasco [Star #8564], Miguel A. Bahena [Star #10418], Artemio Vargas [Star #7624], Dora M. Hindman [Star #1156], Tracy L. Walczak [Star #1675], Aaron S. Cobb [Star #20475], Ryan P. Brown [Star #1836], Evelyn F. Redding [Star #5333], and Roldan Solis [Star #10461] were sworn officers for the Chicago Police Department and were acting under color of state law and as employees, agents, or representatives of the City of Chicago. These Defendants are being sued in their individual capacities.

5. At all times herein mentioned, Torrey L. Barnes and Devan H. Richardson were detention aides for the Chicago Police Department and were acting under color of state law and as employees, agents, or representatives of the City of Chicago. These Defendants are being sued in their individual capacities.

6. At all times herein mentioned, the City of Chicago was a political division of the State of Illinois, existing as such under the laws of the State of Illinois.

7. At all relevant times, the City of Chicago maintained, managed, and/or operated the Chicago Police Department.

**FACTUAL ALLEGATIONS**

8. Since the early 1990s, Earl has suffered from a diagnosed mental illness that causes him to experience severe symptoms, including psychosis, hallucinations, depression, and paranoia, among others, when not treated properly with psychotropic medication.

9. The symptoms of his mental illness were generally well-controlled with psychotropic medications prior to the events giving rise to this litigation.

2

10. On January 12, 2015, Earl was experiencing severe symptoms of his mental illness, so he attempted to take a Chicago Transit Authority bus to the hospital to seek treatment.

11. At some point, the driver of the Chicago Transit Authority bus that Earl was attempting to take to the hospital requested assistance from several nearby individual Defendant Officers, claiming that that Earl had been causing a disturbance.

12. On information and belief, individual Defendant Officers Bahena, Gali, Vargas, Paoletti, and Moser (hereinafter referred to collectively as the "Arresting Officers") responded to the bus driver's request for assistance.

13. When the Arresting Officers arrived, Earl was displaying severe and obvious signs of mental illness, and was indeed suffering a mental health crisis.

14. Shortly after arriving, one or more of the Arresting Officers grabbed Earl and aggressively attempted to search him.

15. After Earl did not immediately acquiesce to a search, one or more of the Arresting Officers delivered multiple blows about his face and body, tackled him to the ground, and restrained him, while the others in the immediate vicinity did nothing to prevent or stop this force.

16. This force was retaliatory.

17. Prior to and/or during his seizure, Earl informed the Arresting Officers that he was sick, mentally ill, on his way to the hospital, needed treatment/medication, and/or that he was experiencing symptoms of mental illness.

18. Prior to and/or during this seizure, the Arresting Officers knew or should have known that Plaintiff had a mental illness, was experiencing a mental health crisis, and needed immediate treatment.

3

19. On information and belief, at some point after the Arresting Officers tackled and restrained Earl, individual Defendant Officers Guzman, Haynie, O'Shea, Solivan, Straka, and Carrasco (hereinafter referred to collectively as the "Assisting Officers") assisted with Earl's arrest.

20. Prior to and/or during their assistance, Earl informed the Assisting Officers that he was sick, mentally ill, on his way to the hospital, needed treatment/medication, and/or that he was experiencing symptoms of mental illness.

21. Prior to and/or during their assistance, the Assisting Officers knew or should have known that Plaintiff had a mental illness, was experiencing a mental health crisis, and needed immediate treatment.

22. After Earl had already been tackled and restrained, one or more of the Arresting Officers and/or Assisting Officers struck Earl about the face and body, while all the others in the immediate vicinity did nothing to prevent or stop this force.

23. There was no reason for the Arresting Officers or the Assisting Officers to use any force on Earl after he had been tackled.

24. The force used after Earl was tackled was retaliatory.

25. Individual Defendant Officers Bahena and Vargas subsequently transferred Earl to the 7th District Police Station, although they knew or should have known that Plaintiff had a mental illness, was experiencing a mental health crisis, and needed immediate treatment.

26. Earl remained at the station, untreated, until January 14, 2015, two days after his arrest.

27. On information and belief, after Earl arrived at the station, each of the individual Defendants named in this Complaint (hereinafter collectively referred to as the "Station Defendants") encountered Earl at some point before he was released from custody on January 14, 2015.

4

28. After he was taken to the station, one or more of the Station Defendants struck Earl about the face and/or body and pushed him into a wall, among other things, while others in the immediate vicinity did nothing to prevent or stop this force.

29. There was no reason to use force on Earl at the police station.

30. Further, while at the station, Earl continued to display severe and obvious signs of mental illness, informed the Station Defendants that he was sick, mentally ill and/or suffering from symptoms of a mental illness, that he needed to go to the hospital, that he needed medication, and/or that he was on his way to obtain such medication when he was arrested.

31. Further, Earl's mental illness was so obvious while he was in the station that even a lay person would have easily recognized that treatment by a mental health professional was necessary—he behaved in a bizarre way and was confused, disorganized, suspicious, and paranoid.

32. On information and belief, each of the Station Defendants knew or should have known that Plaintiff had a mental illness, was experiencing a mental health crisis, and needed immediate treatment.

33. Despite this, the Station Defendants failed to provide Earl with any treatment while he was in their custody.

34. For example, the Station Defendants did not attempt to obtain or administer Earl's medications, they did not take him to a mental health professional or facility—or request that he be taken to a mental health professional or facility—to be evaluated, and they did not instruct a supervisor that Earl needed treatment.

35. Earl was not released from City of Chicago's custody until January 14, 2015, when he was placed into the custody of the Cook County Sheriff and transferred to the Cook County Department of Corrections—until this time, he remained in police custody, suffering from untreated mental illness as well as physical injuries inflicted by Defendants.

36. Due to Defendants' above-described acts, Earl sustained damages.

37. Defendants' above-described acts were willful, wanton, and malicious and done with reckless indifference to and callous disregard for Earl's rights and medical needs and justify the awarding of punitive damages against the individual defendants to punish and deter them and deter other City of Chicago employees and/or agents from similar conduct.

38. Earl has had to retain an attorney to render legal assistance to him in this civil action so that he might vindicate his constitutional rights.

## COUNT I
## AGAINST ALL INDIVIDUAL DEFENDANTS
## FOR UNREASONABLE SEIZURE AND DETENTION
## (EXCESSIVE FORCE, FAILURE TO INTERVENE, AND FAILURE TO PROVIDE MEDICAL CARE)

39. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully set forth at this place.

40. As described more fully above, Earl's constitutional rights were violated in the following ways:

   a. one or more Arresting Officers struck and tackled him without proper justification;

   b. one or more Arresting Officers and/or Assisting Officers struck him after he had already been tackled and restrained;

   c. one or more Station Defendants struck him and pushed him against a wall while he was at the police station and restrained;

   d. one or more Arresting Officers, Assisting Officers, and/or Station Defendants failed to intervene by not preventing the force used by the other Arresting Officers, Assisting Officers, and/or Station Defendants, despite being in the immediate vicinity and having a realistic opportunity to do so;

6

    e. individual Defendant Officers Bahena and Vargas failed to provide Earl with access to medical and mental health care by transporting him to the station instead of taking him to a healthcare facility or professional, or otherwise providing care; and

    f. one or more of the Station Defendants failed to provide Earl with access to medical and mental health care while he was detained in the station.

41. These actions were objectively unreasonable.

42. As a result, Earl sustained damages.

43. Therefore, the individual defendants are liable to Earl under 42 U.S.C. Section 1983.

## COUNT II
## AGAINST ALL INDIVIDUAL DEFENDANTS
## FOR DELIBERATE INDIFFERENCE (FAILURE TO PROVIDE MEDICAL CARE)

44. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully set forth at this place.

45. As described more fully herein, individual Defendant Officers Bahena and Vargas, as well as the Station Defendants, failed to provide Earl with necessary medical attention for his objectively serious mental illness, which they observed and/or had knowledge of.

46. Earl's mental illness was both diagnosed as mandating treatment with psychotropic medications by multiple physicians and so obvious during his transportation and detention that a lay person would have easily recognized that he needed a doctor's immediate attention.

47. Despite being aware of Earl's serious medical need, individual Defendant Officers Bahena and Vargas disregarded it and transported him to the police station instead of to a healthcare facility or professional, or otherwise failed to provide care.

48. Despite being aware of Earl's serious medical need, one or more of the Station Defendants disregarded it left him in lockup until January 14, 2015, without any treatment.

7

49. These actions constituted deliberate indifference to Earl's objectively serious medical need.

50. As a result, Earl sustained damages.

51. Therefore, the individual defendants are liable to Earl under 42 U.S.C. Section 1983.

## COUNT III
## AGAINST THE CITY OF CHICAGO for INDEMNIFICATION

52. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully set forth at this place.

53. Pursuant to 745 ILCS 10/9-102, the City of Chicago must pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an employee, acting within the scope of his or her employment, is found liable.

54. The acts and/or omissions of each of the individual Defendants were committed within the scope of their employment.

55. In the event that a judgment for compensatory damages is entered against the individual Defendants and/or any of them, the City of Chicago must pay the judgment,[1] as well as the associated attorneys' fees and costs.

## COUNT IV
## AGAINST THE CITY OF CHICAGO for MUNICIPAL LIABILITY (*MONELL* CLAIMS)

56. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully set forth at this place.

57. The unconstitutional conduct of the individual Defendants described herein was caused in part by widespread policies, practices, and/or customs of the City of Chicago.

58. At all times herein mentioned, the City of Chicago 1) failed to adequately train its employees and agents to properly identify and respond to arrestees displaying signs of mental illness;

---

[1] excluding punitive damages

2) failed to implement and enforce the Chicago Police Department's protocols that required arrestees displaying symptoms of mental illness to be transported to a mental health intake facility; 3) failed to impose discipline or counseling when City of Chicago employees and agents failed to abide by these protocols; and 4) effectively encouraged City of Chicago employees and agents to disregard these protocols.

59. These policies, practices, and/or customs, as well as the resulting constitutional violations, were so persistent and widespread that they constituted the City of Chicago's standard operating procedures.

60. The City of Chicago, through its policymakers, knew that correcting these issues was necessary to avoid likely further constitutional violations caused by its employees and/or agents in responding improperly to arrestees displaying symptoms of mental illness.

61. Regardless of whether the City of Chicago possessed the knowledge alleged in the above paragraph, it was obvious to the City of Chicago, through its policymakers, that correcting these issues was necessary to avoid likely further constitutional violations caused by its employees and/or agents in responding improperly to arrestees displaying symptoms of mental illness.

62. The City of Chicago's widespread policies, practices, and/or customs described herein and its failures to correct them constitute deliberate indifference to the rights of arrestees displaying symptoms of mental illness with whom employees and/or agents of the City of Chicago come into contact.

63. The City of Chicago's widespread policies, practices, and/or customs and its failures to correct them described herein caused one or more of the individual Defendants to violate Earl's constitutional rights.

64. As a result, Earl sustained damages.

65. The City of Chicago is therefore directly liable to Earl for the constitutional violations of the individual Defendants alleged herein.

## COUNT V
## FAILURE TO ACCOMMODATE
## AGAINST THE CITY OF CHICAGO

66. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully set forth at this place.

67. At all times herein mentioned, the City of Chicago was a public entity for the purposes of Title II of the Americans with Disabilities Act.

68. At all times herein mentioned, the Chicago Police Department was a program or activity of the City of Chicago receiving federal financial assistance for the purposes of the Rehabilitation Act.

69. At all times herein mentioned, Earl's mental illness rendered him a qualified individual with a disability for the purposes of the Americans with Disabilities Act and the Rehabilitation Act.

70. Defendant City of Chicago, through its agents, as described more fully throughout this Complaint, deprived Earl of his rights under Title II of the Americans with Disabilities Act and the Section 504 of the Rehabilitation Act by failing to reasonably accommodate his mental illness in the following ways:

    a. the Arresting Officers immediately acted aggressively towards Earl, grabbing and searching him, instead of giving him some time and space to explain himself, calling for an officer trained in crisis intervention techniques to assist, or otherwise providing an accommodation, despite knowledge that Earl had a mental illness and was experiencing a mental health crisis; and

      b. nobody took him to a mental health facility or otherwise provided him with adequate care while in custody, despite knowledge that Earl had a mental illness and was experiencing a mental health crisis.

71. This conduct was intentional and deliberately indifferent to Earl's federally protected rights.

72. As a result, Earl sustained damages.

73. Therefore, the individual defendants are liable to Earl under 42 U.S.C. Section 12132 and 29 U.S.C. Section 794.

**WHEREFORE**, Plaintiff Clyde Earl, by and through his attorneys, requests that Defendants be found liable and that:

    a. all defendants be ordered to pay Plaintiff's compensatory damages;

    b. all defendants be ordered to pay Plaintiff's attorneys' fees;

    c. the individual defendants be ordered to pay punitive damages; and

    d. all defendants be ordered to pay Plaintiff's costs.

Respectfully submitted,

BY:   <u>s/ Steven J. Molitor</u>
        One of Plaintiff's Attorneys

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022 | Fax: 312-697-0812
smolitor@julieherreralaw.com