UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLYDE EARL, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 195 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ANTONIO ESPEJO, JUAN GALI, ARTURO GUZMAN, JOSEPH R. PAOLETTI, EDDIE HAYNIE, EDWARD M. MOSER, COLIN F. O'SHEA, JORGE SOLIVAN, DOUGLAS STRAKA, MICHAEL CARRASCO, MIGUEL BAHENA, ARTEMIO VARGAS, DORA HINDMAN, TRACY WALCZAK, AARON COBB, RYAN P. BROWN, EVELYN F. REDDING, ROLDAN SOLIS, TORREY BARNES, DEVAN H. RICHARDSON, and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Clyde Earl filed this suit against the City of Chicago, eighteen Chicago Police Department ("CPD") officers, and two detention aides, bringing claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), for the alleged failure to accommodate his mental illness during his arrest and subsequent detention. Doc. 23. The City moves to dismiss the ADA and Rehabilitation Act claims (which are brought only against it) under Federal Rule of Civil Procedure 12(b)(6). Doc. 34. The motion is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

1

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Earl's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Earl as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Earl was diagnosed with schizophrenia or schizoaffective disorder in the 1990s. Doc. 38 at 1, 6-7. He experiences psychosis, hallucinations, depression, and paranoia when he is not treated with psychotropic medication. Doc. 23 at ¶ 8; Doc. 38 at 1. On January 12, 2015, Earl was experiencing severe symptoms of his mental illness and attempted to take a bus to the hospital for treatment. Doc. 23 at ¶ 10. The driver sought assistance from five CPD officers, telling them that Earl was "causing a disturbance." *Id.* at ¶ 11. The officers found Earl displaying obvious and severe signs of mental illness. *Id.* at ¶ 13. Earl told the officers that he was mentally ill and needed treatment, but the officers acted aggressively and did not give him the chance to explain himself. *Id.* at ¶ 14; Doc. 38 at 1-2. When Earl did not acquiesce to a search, one officer struck and tackled him. Doc. 23 at ¶¶ 14-15. Six more officers arrived to assist with the arrest. *Id.* at ¶ 19. After he was restrained, Earl attempted to explain his condition to the second group of officers, but was struck again. *Id.* at ¶¶ 20-22.

The officers took Earl to the police station even though they knew or should have known that he was experiencing a mental health crisis and needed immediate treatment. *Id.* at ¶ 25. Earl was held at the station for two days without receiving medical attention. *Id.* at ¶ 26. None

of the arresting officers, assisting officers, or transporting officers took him to a medical facility, called for someone trained in crisis intervention, or gave him the chance to explain his condition. *Id*. at ¶ 34; Doc. 38 at 10.  While detained, Earl continued to show obvious signs that he was in a mental health crisis and needed immediate treatment.  Doc. 23 at ¶¶ 30-32.  Earl in fact told the officers that he was suffering from symptoms of a medical illness and needed medical attention. *Id*. at ¶ 30.  Detention staff did not transport Earl to a medical facility, attempt to give him his medication, or arrange for a mental health evaluation.  *Id*. at ¶¶ 33-34.

### Discussion

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance … ."  29 U.S.C. § 794(a). "Other than some minor differences not relevant here, the statutes are coextensive," so the court will for ease of exposition refer to both statutes simply as the ADA.  *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014); *see also Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) ("[T]he ADA and the [Rehabilitation Act] … run along the same path and can be treated in the same way … .").

"To establish a violation of Title II of the ADA, the plaintiff must prove [1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an

entity, and [3] that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotation marks omitted); *see also Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (same). Defendants assert that Earl's allegations fail to satisfy all three elements.

As to the first, the City argues that Earl has not properly alleged that he is disabled. Doc. 34 at 4-5. The ADA provides that a "physical or mental impairment that substantially limits one or more major life activities" qualifies as a "disability." 42 U.S.C. § 12102(1)(A); *see Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015). "Major life activities" include "concentrating, thinking, [and] communicating." 42 U.S.C. § 12102(2).

Earl alleges that he suffers from schizophrenia or schizoaffective disorder. Doc. 38 at 6. That allegation alone suffices to plead that Earl is disabled. *See Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 656 (7th Cir. 2001) ("Schizoaffective disorder can … cause hallucinations, disorganized thinking, delusions, obsessions, social withdrawal, and depressive episodes."); *Palmer v. Circuit Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997) (noting that schizophrenia as a "mental illness that is … disabling"); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir.1996) (holding that a plaintiff with paranoid schizophrenia was disabled under the ADA). Moreover, Earl's allegations indicate that his illness substantially limited his ability to engage in the major life activities of concentrating, thinking, and communicating. Doc. 23 at ¶¶ 8, 10 (alleging that Earl's mental illness caused "severe symptoms, including psychosis, hallucinations, depression, and paranoia" and that he was experiencing those symptoms on the day of his arrest), 31 (alleging that Earl "was confused, disorganized, suspicious, and paranoid" as a result of his mental illness while at the police station). Earl therefore has adequately alleged that he is a qualified individual with a disability.

4

As to the second element, the City contends that Earl was not "denied the benefits of [its] services, programs, or activities … or otherwise subjected to discrimination" because it was not required to provide Earl with access to mental health treatment during his arrest or detention. Doc. 34 at 5-7. Focusing initially on the arrest, the City argues that Earl was not entitled to an accommodation at that point because the ADA does not apply to exigent circumstances. *Id*. at 5-6. In support, the City cites *Sallenger v. City of Springfield*, 2005 WL 2001502 (C.D. Ill. Aug. 4, 2005), which held that "[a]ny requirement to accommodate [the plaintiff's] disability during the course of his arrest would come into play once the exigent circumstances surrounding the struggle ceased." *Id*. at *31. *Sallenger* in turn cited *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000), which held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents … prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id*. at 801. Other authority, however, recognizes that there may be some circumstances where the ADA's accommodation requirement applies during an arrest. *See Spencer v. Dawson*, 2006 WL 3253574, at *11 (N.D. Ill. Nov. 7, 2006) ("The Village also argues that Title II does not apply to an officer's on-the-street responses to reported disturbances … [citing *Hainze* and *Sallenger*]. The court will not attempt to predict what the Seventh Circuit might hold when presented with this issue as it must accept Spencer's version of events at this stage in the proceedings. Viewing the record from Spencer's perspective, there was no exigent threat to officers or third parties because Spencer, while agitated and angry, was not threatening anyone's safety.") (internal quotation marks omitted).

There is no need to run this issue to ground at the pleading stage because Earl's ADA claim covers not only his arrest, but also what happened following the arrest, when any exigency had subsided. Earl alleges that, while in custody at the police station, he requested and was

5

denied medical treatment. Medical treatment is a "service" under the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (observing that "prisons provide inmates with … medical 'services,' … which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')" for purposes of the ADA). And "[o]nce an arrestee with a disability is in custody, the police have a duty to reasonably accommodate the arrestee's disability." *Paine ex rel. Eilman v. Johnson*, 2010 WL 785397, at *8 (N.D. Ill. Feb. 26, 2010).

The City submits that Earl's request for medical attention constitutes "special treatment as opposed to an accommodation." Doc. 34 at 6. According to the City, "providing a mental health evaluation or psychiatric treatment to someone in custody is not something that is offered to all arrestees by the CPD, nor is it part of the regular CPD processing procedures (booking; fingerprinting; etc.) conducted with arrestees while in custody." *Id.* at 7. That argument is not responsive to Earl's allegations. Earl does not claim that he was denied a particular type of treatment that *every* arrestee is given; rather, he alleges that "despite making access to medical care available to detainees, the City did not [reasonably] accommodate his *specific* disability by providing him with access to such care." Doc. 38 at 13 (emphasis added).

"Whether a requested accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001); *see also Wis. Cmty. Sevs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006). Earl's allegations allow the plausible inference that at least some medical attention would have been a reasonable accommodation during his detention; any further "fact-specific … balancing" at the pleading stage would be premature. *Dadian*, 269 F.3d at 838; *see also McWright v. Alexander*, 982 F.2d

6

222, 227 (7th Cir. 1992) ("As for the balance between 'reasonable accommodation' and 'undue hardship,' these matters are questions of fact and thus generally inappropriate for resolution on the pleadings."). Thus, Earl has sufficiently pleaded that he was denied the benefits of the services of a public entity after his arrest. *See Paine*, 2010 WL 785397, at *4 (recognizing a "cognizable claim that the City had failed to provide [a bipolar arrestee] with a reasonable accommodation in the form of access to medical or mental health assistance, in violation of Title II" while she was detained in CPD custody).

Finally, Earl's complaint adequately pleads the third element of his ADA claim, that the denial of benefits was by reason of his disability. "[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999); *see also CTL*, 743 F.3d at 528-29 (recognizing that discrimination by reason of disability may be established by showing that: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, *or* (3) the defendant's rule disproportionately impacts disabled people") (emphasis added); *Wis. Cmty. Sevs.*, 465 F.3d at 751 ("[F]ailure to accommodate is an *independent* basis for liability under the ADA."). Here, Earl alleges that the City failed to reasonably accommodate his mental illness by denying his requests for medical attention. That is sufficient at the pleading stage to allege discrimination by reason of his disability. *See Paine*, 2010 WL 785397, at *9 (allowing an ADA claim to proceed on the theory that the defendants "fail[ed] to reasonably accommodate [the plaintiff's] known, and arguably manifest, mental illness by taking her for mental health care while she was in CPD custody").

## Conclusion

The City's partial motion to dismiss is denied. The City shall answer the complaint in its entirety by September 18, 2017.

August 28, 2017

_____
United States District Judge